IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| John Dewese, | Civil Action No. 2:11-3024-DCN-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| Science Applications International Corp., | |
| Defendant. | |

This matter is before the Court on the defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [Doc. 5], requesting that the plaintiff's defamation and negligent supervision claims be dismissed. The plaintiff's Complaint seeks damages and other relief from the defendant for (1) race discrimination in violation of Title VII of the Civil Rights Act of 1991, as amended; (2) retaliation in violation of Title VII; (3) defamation; and (4) negligent supervision.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## BACKGROUND

The plaintiff is a former shipping and receiving clerk of the defendant. (Compl. ¶ 6.) The plaintiff was hired by the defendant in October 2009, and his employment was terminated, on May 20, 2011. *Id.* ¶¶ 7, 9.

The plaintiff contends that he was paid less than white drivers, *id.* ¶ 11, and that certain employees of the defendant used homosexual and racial epithets in "referring to many employees, including Plaintiff," *id.* ¶ 29-31. He also alleges that the defendant failed to supervise this "horrific treatment suffered by Plaintiff at the hands of the [sic] [Leroy] Watts . . . ." *Id.* ¶ 44.

## APPLICABLE LAW

**MOTION TO DISMISS STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a plausible claim for relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Stated differently, "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

2

complaint has alleged--but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)).

**DISCUSSION**

**I.    Defamation Claim**

The defendant first moves for dismissal of the plaintiff's defamation claim. That claim accuses the defendant of referring to the plaintiff as a "'fag' and 'faggot'" or "nigger" and that a Karl Chronister "indicated that black employees were overpaid . . . ." (Compl. ¶¶ 29-31.) The plaintiff contends that these remarks are defamation *per se* as they imply inadequacy in performing the plaintiff's trade and profession. *Id.* ¶ 33.

The defendant argues that such words, while reprehensible if true, do not support a claim of defamation. *See Wilson v. Evans*, 2007 WL 4287644, at *7 (D.S.C. Dec. 4, 2007) (citing *Bradshaw v. Swagerty*, 563 P.2d 511, 514 (Kan. Ct. App. 1977) ("The term 'nigger' is one of insult, abuse, and belittlement harking back to slavery days. Its use is resented and rightly so. It nevertheless is not within any category recognized as slanderous per se"); *Irving v. J.L. Marsh, Inc.*, 360 N.E.2d 983, 985 (Ill. Ct. App. 1977) ("In arguing that the racial slur 'nigger' implies that an individual is generally lacking in the virtues of honesty, intelligence or creativity, . . . plaintiff attributes a definition to the word that is far in excess of its meaning. The words used by defendant's salesman [in referring to plaintiff as 'arrogant nigger'] do not impute an inability to perform or want of integrity in the discharge of the duties of office or employment"); *Garraway v. Diversified Material Handling, Inc.*, 975 F. Supp. 1026, 1033-34 (N.D. Ohio 1997) ("The vulgar

3

phraseology selected by [Watt] reflects more on his own character than that of Plaintiff)).

The plaintiff does not rejoin the argument but instead contends that she "indicated numerous times throughout [the] Complaint that Plaintiff was publicly threatened by another employee" and that "[a]ll employees in attendance at the meeting in which Strickland boldly proclaimed 'I'll take you out' were keenly aware of the altercation and angst that existed between the two men." (Pl. Resp. at 3.) The plaintiff reasons, therefore, "[f]or Defendant to then terminate Plaintiff in such close proximity to these events clearly left fellow employees with the mindset that Plaintiff had done something improper." *Id.* In other words, the plaintiff contends that certain actions of the defendant implicitly defamed him.

The defendant admits that defamation may be implied. (Def. Reply at 2-3.) The problem, however, is that the allegations recited, immediately above, do not actually appear anywhere in the Complaint. (See generally Compl.) The defendant has offered that the plaintiff's argument in this regard was actually mistakenly copied from another pending case and inserted into the present response of the plaintiff. (Def. Reply at 2 n.1) The plaintiff has not clarified.

The offensive words and names alleged in the Complaint are not defamatory as a matter law and, therefore, not actionable here. But, whether by inadvertence or purposefully, the plaintiff has alluded to other incidents in her response which might have defamed him. There appears, therefore, to be some reason to permit leave to

attempt to amend the Complaint with additional factual detail. (See Pl. Resp. at 3.) And, whether that factual detail might qualify as an actionable and defamatory insinuation cannot now be determined. But, as the defendant properly concedes, the South Carolina Supreme Court has recognized the possibility that "[a] mere insinuation is actionable as a positive assertion if it is false and malicious and the meaning is plain." *Eubanks v. Smith*, 354 S.E.2d 898, 901 (S.C. 1987); *Tyler v. Macks Stores of S.C., Inc.*, 272 S.E.2d 622, 634 (citing *Timmons v. News & Press, Inc.*, 103 S.E.2d 277, 280 (1958)).

For this reason, the undersigned would recommend leave to amend the Complaint.

## II. Negligent Supervision

The defendant next contends that the plaintiff's claim for negligent supervision is barred by the exclusivity provision of the South Carolina Workers' Compensation Act (the "Act"). S.C. Code. Ann. § 42-1-540. That statute states:

> The rights and remedies granted by this Title to an employee when he and his employer have accepted the provisions of this Title, respectively, to pay and accept compensation on account of personal injury or death by accident, shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin as against his employer, at common law or otherwise, on account of such injury, loss of service or death.

*Id.* Additionally, "Every employer and employee . . . shall be presumed to have accepted the provisions of [the Act] respectively to pay and accept compensation for

personal injury . . . arising out of and in the course of the employment and shall be bound thereby." S.C. Code § 42-1-310. The South Carolina General Assembly has, therefore, vested the South Carolina Workers' Compensation Commission with exclusive original jurisdiction over an employee's work-related injuries. *See Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002).

The plaintiff's negligent supervision claim, therefore, is preempted by the South Carolina Worker's Compensation Act because it alleges personal injury arising out of and in the course of the plaintiff's employment. *See Sabb,* 567 S.E.2d at 234 (negligent supervision). South Carolina appellate courts have specifically held that an action alleging negligent supervision of a co-employee falls squarely within the "exclusivity provision" of the Workers' Compensation Act. *See, e.g. id.* (finding that causes of action by employee alleging negligent supervision and negligent retention of another employee are within exclusive original jurisdiction of Workers' Compensation Commission); *Palmer v. House of Blues Myrtle Beach Rest. Corp.*, 2006 WL 2708278 (D.S.C. September 20, 2006) (dismissing negligent supervision cause of action because barred by the exclusivity provision of the South Carolina Workers' Compensation Act).

The plaintiff responds, however, that the Act by its very language only covers "injury by accident" and the plaintiff "has complained of no injury, other than harm to his reputation, and any acts of the Defendant were certainly not the result of an accident." (Pl. Resp. at 4.) The plaintiff contends, therefore, that his claim is taken out of the ambit of the exclusivity provision because the defendant acted with requisite intent.

It is true that the Act does not bar a common law action if the employer or its alter ego "acted with deliberate or specific intent to injure the employee." *Peay v. U.S. Silica Co.,* 313 S.C. 91, 437 S.E.2d 64, 65 (S.C.1993). But, South Carolina courts, applying Section 42–1–540, have held that intentional torts and claims for negligent supervision, specifically, are, in fact, covered by the Workers' Compensation Act, as stated. *See Washington v. Hilton Hotels Corp.*, 2008 WL 747792, at * 4 (D.S.C. Mar.17, 2008) *Palmer*, 2006 WL 2708278, at *3 (D.S.C. Sept.20, 2006); *Dickert v. Metropolitan Life Ins. Co.*, 428 S.E.2d 700, 701-02 (S.C.1993) (holding that the Act provides the exclusive remedy for work-related injuries, and that claims for negligence, including hiring, retention, and supervision, as well as emotional distress are covered by the Act). Courts have been consistent in this conclusion even where the defendant's conduct is alleged to have been wanton, willful and reckless. *See Washington*, 2008 WL 747792, at * 7; *Palmer*, 2006 WL 2708278, at * 3.

The Supreme Court of South Carolina has reiterated that the only exceptions to the Act's exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the employer or its alter ego; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations. *Cason v. Duke Energy Corp.*, 348 S.C. 544, 560 S.E.2d 891, 893 (S.C.2002). The plaintiff has not alleged and does not appear reasonably able to allege that Leroy Watts, the "employee," identified in the Complaint as not having

7

been properly supervised (Compl. ¶¶ 42-43), represents the "alter ego" of the defendant, defined as a "dominant corporate owner[] [or] officer[]." *Dickert*, 428 S.E.2d at 701. The term simply does not include "supervisory employees." *Id*. The Complaint identifies Watts as "an employee of the Defendant" and no more. (Compl. ¶ 41.)

The claim, therefore, cannot escape the reach of the Act's exclusivity provision.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the defendants' motion to dismiss [Doc. 5] should be GRANTED in part and DENIED in part. Specifically, the plaintiff's claim for negligent supervision should be dismissed *with prejudice*. With respect to his defamation claim, however, the plaintiff has leave to file an amended complaint, in keeping with the requirements of this recommendation, within ten (10) of any order of the district court adopting this recommendation.

IT IS SO RECOMMENDED.

                                                s/Bruce Howe  Hendricks
                                                United States Magistrate Judge

May 2, 2012
Charleston, South Carolina.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).